UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                                :

PAULETTA HOUSTON,                   :         CASE NO. 1:05cv61

          Plaintiff,                  :         JUDGE JAMES S. GWIN

vs.                                      :         OPINION AND ORDER
                                       :         [Resolving Doc. Nos. 28, 29]
UNUM LIFE INSURANCE COMPANY  :
OF AMERICA,                           :

          Defendant.                :

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Pauletta Houston and Defendant Unum Life Insurance Company of America both move for judgment on the administrative record in this ERISA case. [Docs. 28, 29]. The dispute arises out of Unum's denial of disability benefits to the plaintiff. After reviewing the parties' briefs and the administrative record, the Court **DENIES** the plaintiff's motion for judgment on the administrative record, and **GRANTS** Unum's motion.

I. Background

*A. The Plan*

Beginning in 1990, Plaintiff Houston worked for Ritz Carlton Hotel Company, LLC, as a housekeeping office coordinator. Houston was covered by Ritz Carlton's Group Insurance Plan (the "Plan"). [A.R. at 649]. The Plan includes group long-term disability coverage through Unum. The Plan states that it is governed by ERISA and vests Unum with "discretionary authority to determine . . . eligibility for benefits and to interpret the terms and provisions" of the Plan. *Id.* at 666.

Case No. 1:05cv61
Gwin, J.

An employee is eligible for long-term disability benefits under the Plan when Unum determines that she is "limited from performing the material and substantial duties of [her] regular occupation due to [her] sickness or injury." *Id.* at 662. The Plan defines "regular occupation" as the occupation the employee routinely performs when the disability begins. *Id.* at 643. In determining an employee's regular occupation, "Unum will look at [the] occupation as it is normally performed in the national economy, instead of how the work tasks are preformed for a specific employer or at a specific location." *Id.*

For disabilities based on "self-reported symptoms," Unum will generally make no more than 12 monthly disability payments. Unum will make additional payments for such disabilities if the employee is confined to a hospital at the end of the 12-month period. *Id.* at 656. The Plan defines "self-reported symptoms" as symptoms "that are not verifiable using tests, procedures, or clinical examinations," including "headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness, and loss of energy." *Id.* at 642.

*B. The Job*

Ritz Carlton described plaintiff's essential job functions as including: (1) maintaining knowledge of the hotel and housekeeping services, (2) entering data in the housekeeping computer system, (3) coordinating work by housekeeping staff, (4) distributing materials to staff, (5) overseeing inventory, and (6) distributing departmental mail. *Id.* at 603-601.[1] The position also required Houston to "[s]et up work station[s] with necessary supplies and resource materials, [and] maintain cleanliness throughout shift." *Id.* at 601. Houston says that her job required that she stand

---

[1] For whatever reason, defense counsel chose to file the administrative record in descending page order. The Court cites the page numbers in the order they appear in the record.

-2-

Case No. 1:05cv61
Gwin, J.

in for any absent housekeepers, and necessitated "a good deal of walking, pushing carts, bending and lifting laundry bags that could weigh up to twenty (20) pounds each." *Id.* at 160.

*C. The Illness*

In April 2002, the plaintiff discovered a lump in her right breast. She underwent a mammogram on April 8, and then a biopsy on April 19. Her last day of work at Ritz Carlton was April 18. *Id.* at 334, 682. The plaintiff's oncologist, Dr. Oscar Nicholson, diagnosed her as suffering from breast cancer. On May 21, 2002, the plaintiff underwent a lumpectomy. Dr. Nicholson referred the plaintiff to another oncologist, Dr. Franklin Price, for further treatment. After consulting with Dr. Price, the plaintiff began chemotherapy on June 3, 2002. *Id.* at 327. Houston's chemotherapy ended on August 26, 2002. The plaintiff then began radiation treatment, which ended on January 17, 2003. *Id.* at 772.

On July 22, 2002, the plaintiff sought short-term disability benefits from Unum under the Plan. *Id.* at 712-723. The plaintiff attached the statement of Dr. Price that she should refrain from "heavy lifting, climbing, stooping, pushing, [and] pulling." *Id.* at 722. Dr. Price also indicated that the plaintiff should be able to return to full-time work by September 6, 2002. *Id.* Unum approved Houston's claim for short-term disability benefits on July 30, 2002. The short-term benefits ran from May 3, 2002, through July 18, 2002. *Id.* at 138. These payments exhausted Houston's short-term disability coverage under the Plan. *Id.* Unum then considered the plaintiff for long-term disability benefits. *Id.*

After further consultation with the plaintiff, Unum approved her claim for long-term disability benefits on September 27, 2002. *Id.* at 792-790. Unum paid long-term benefits retroactive to July 18, 2002.

-3-

Case No. 1:05cv61
Gwin, J.

Houston's radiation treatments ended on January 17, 2003. On February 10, 2003, the plaintiff complained to Dr. Frederick Harris, her primary care physician, about pain in her right arm and shoulder. *Id.* at 306. On February 24, 2003, the plaintiff submitted a supplemental statement to Unum indicating that she could perform only "very light activities," and that she needed assistance with housework and shopping. *Id.* at 623. On February 26, 2003, the plaintiff met with Dr. Nicholson, and rated her pain as a "3" on a 1-10 scale. *Id.* at 346.

After Houston made additional complaints of pain and swelling in her shoulder, Dr. Harris ordered an x-ray of her right shoulder on October 20, 2003. *Id.* at 305. Based on the x-ray, the reviewing radiologist reported: "No evidence of fracture is noted. Mild degenerative changes are present without joint space narrowing or bone destruction or soft tissue calcifications. Axillary clips are seen from a previous lumpectomy. There is no significant change since the last exam." *Id.* The plaintiff also states that during this period Dr. Nicholson prescribed Propoxy, a narcotic used to treat moderate-to-severe pain. [Doc. 28 at 3 (citing A.R. at 413)].[2]

On October 17, 2003, Unum contacted Houston for an update. The plaintiff stated that her right arm was painful, and that she had difficulty reaching, pulling, and lifting. [A.R. at 539-38]. The plaintiff also reported that she was not in physical therapy, and that she could cook and do light cleaning. *Id.* Unum contacted her again on December 30, 2003. The plaintiff again said she was not in physical therapy, and that she still had difficulty lifting and pulling. *Id.* at 428. She continued receiving disability benefits.

On January 21, 2004, Elaine Fermanis, a registered nurse at Unum, reviewed the plaintiff's

---

[2] The record page that the plaintiff cites does not indicate that Nicholson prescribed Propoxy. So far as the Court can decipher Dr. Nicholson's handwriting, he was actually concerned that the plaintiff had elevated cholesterol levels. The report also indicates that the plaintiff rated her pain a relatively mild "3" on a 1-10 scale. [A.R. at 414-13].

-4-

Case No. 1:05cv61
Gwin, J.

file. *Id.* at 404-3. Fermanis noted that the plaintiff had difficulty lifting and pulling, and had "only occasional complaints of right breast pain. *Id.* Based on this, Fermanis concluded that the plaintiff should be able to return to work. Unum commissioned a review of Fermanis' report by Dr. Lawrence Broda. *Id.* at 402. Dr. Broda agreed that "there is no evidence of findings that rise to impairing levels." *Id.*

*D. The Denial*

On January 29, 2004, Unum informed Houston by letter that it would stop paying long-term disability benefits. *Id.* at 395-391. The letter stated, in pertinent part:

> Because you are no longer in treatment for cancer and have only occasional complaints of right breast pain not requiring physical therapy or treatment by a pain management specialist and given that you are able to perform all activities of daily living, take the bus for transportation, and perform routine tasks such as shopping with your family, walking to the post office, light house cleaning chores and meal preparation, we find that you are not limited from resuming your former work capacity at this time. There are no objective findings in the medical information provided of any condition that rises to the level of impairment.
>
> Your position as a housekeeping office coordinator most closely matches the occupation of secretary as it is performed in the national economy. The physical demands are considered sedentary. This occupation requires that you lift/carry up to ten pounds occasionally, negligible amount[s] frequently; sitting most of the time with brief periods of stand/walk. Physical demand include frequent reaching, handling, and fingering.

*Id.* at 392. Unum told Houston that she could appeal this finding.

On June 26, 2004, the plaintiff underwent a vocational assessment. *Id.* at 169. The examiner wrote that the plaintiff could not complete the manual dexterity assessment "due to pain and numbness" in her right arm. *Id.* The examiner also found that the plaintiff could read at the first

Case No. 1:05cv61
Gwin, J.

grade level, and her mathematical proficiency was at the third grade level.

On July 22, 2004, the plaintiff's attorney submitted the results of her vocational assessment and various papers from her physicians to Unum. *Id.* at 174, 170. In the transmission letters to Unum, the plaintiff's attorney did not specifically ask for an appeal of Unum's initial denial. As a result, Unum interpreted the materials as "additional information in order to determine if it changes [Unum's] prior opinion." *Id.* at 172. Unum also instructed Houston's attorney how to make a formal appeal. Houston's counsel did not respond to Unum's letter until nearly one month letter. *Id.* at 63. In the August 19 response letter, Houston's counsel stated that she "certainly intended these filings to be treated as a formal appeal in Ms. Houston's case." *Id*.

On August 12, 2004, the plaintiff submitted an affidavit to Unum. *Id.* at 162. In the affidavit, the plaintiff stated that her position at Ritz Carlton required that she "fill in if a housekeeper was not in attendance or if one had to leave." *Id.* at 160. Further, the plaintiff said that the "full performance of [her] position required a good deal of walking, pushing carts, bending and lifting laundry bags that could weigh up to twenty (20) pounds each." *Id.*

Unum submitted Houston's medical records to Dr. Lawrence Broda on August 16, 2004. *Id.* at 65. Unum asked Dr. Broda to determine whether the newly-submitted medical records should cause Unum to reverse its initial denial. Dr. Broda reported:

> New information includes notes of oncologist, radiation oncologist, and primary care physician. Only the latter reports shoulder pain. Exams are limited without apparent edema of the arm. Tenderness is reported but range of motion is not documented to be reduced nor is there reported muscle weakness, atrophy, warmth, or joint swelling. Physical therapy is not recommended, prior x-rays had shown only mild DJD [degenerative joint disease], and no anti-inflammatories have been prescribed. The new information does not alter prior opinion.

Case No. 1:05cv61
Gwin, J.

*Id.*

On August 24, 2004, Unum referred Plaintiff Houston's claim to Norma Parra, a vocational rehabilitation consultant. *Id.* at 62-60. Parra examined Houston's file and determined that Houston's position most closely matched that of "Housekeeper/Housekeeping Supervisor" in the national economy. *Id.* at 62. Parra found that the position required lifting, carrying, pushing and pulling up to 10 pounds frequently, and up to 20 pounds occasionally. *Id.* at 61. The position also included frequent walking, standing, reaching, and handling.

On September 13, 2004, the plaintiff submitted a more thorough vocational assessment to Unum. *Id.* at 38-34. Mark Anderson performed the assessment. Based solely on Houston's comments, Anderson concluded that Houston suffered from "constant pain" and swelling that limited her ability to write, sit, stand, or walk for extended periods of time. *Id.* at 37. Anderson also relied on two "physical capacity reports" in concluding that Houston could not lift more than five pounds, and that she had difficulty reaching, pushing, and pulling. *Id.* Anderson also noted Houston's low grade-level proficiencies in reasoning, math, and language. *Id.* at 35.

Unum submitted Houston's file to Dr. Allan Lipton for a medical review on September 13, 2004.[3] *Id.* at 24-23. Dr. Lipton is a Professor of Medicine/Oncology at Penn State University. After reviewing Houston's file, Dr. Lipton made the following findings:

1. The restrictions and limitations of the claimant's activity as of 1/29/04 are not supported by appropriate medical workup. The patient was seen primarily by her family physician Dr. Harris during the period of 2003-2004. It would be difficult to say that her surgery, adjuvant chemotherapy, radiation caused her symptoms. This would be a very rare complication of such

---

[3] The response letter from Dr. Lipton reflects that Unum submitted the file on September 13, 2004. Dr. Lipton dated his response letter September 4, 2004, apparently in error. The fax cover sheet and header indicates that Dr. Lipton responded to Unum on October 4, 2004, not September 4.

-7-

Case No. 1:05cv61
Gwin, J.

> treatment. Indeed her right shoulder xray in 2/03 only showed mild degenerative changes. As the symptoms persisted, it is my opinion that the patient should have been referred to an orthopedic surgeon who specializes in shoulder problems as well as a neurologist to perform a workup of her symptoms. In the absence of a more extensive workup it is not possible to say that the patient was indeed disabled and not able to perform her usual work duties.
>
> 2. Impairment of the claimant's right arm is not supported. The patient was not referred for a workup of the right arm and symptoms beyond the shoulder xray.
>
> 3. As mentioned above the patient's complaints of right arm and shoulder pain and disability are not consistent with her documented medical findings.
>
> 4. The medical data do not support any cognitive complaints rising to a level of impairment.
>
> 5. The findings of the vocational analysis are not consistent with the medical records in regard to pain the right arm or cognitive function.

*Id.* at 23.

On October 15, 2004, Unum denied Houston's appeal of the denial of benefits. *Id.* at 17-13. In the denial letter, Unum said that Houston's "claim was denied as of January 29, 2004 because the medical information in her file did not substantiate a conditions severe enough to cause her to be disabled from her regular occupation." *Id.* at 17. The denial letter recounted the plaintiff's medical history in some detail. Unum concluded that "[i]n the absence of a more extensive work-up, and based on the limited clinical and diagnostic data, our physician concluded that the restrictions relating to your client's right shoulder and arm as provided by your client's physicians are not supported." *Id.* at 14. Further, Unum said that "our physician concluded that the medical data does not support any cognitive complaints that would rise to a level of impairment." *Id.*

The plaintiff sued Unum on January 11, 2005. [Doc. 1].

-8-

Case No. 1:05cv61
Gwin, J.

## II. Legal Standard

Because the Plan documents gave Unum discretion to construe and interpret the Plan [*see* A.R. at 666], the Court reviews Unam's determination under the arbitrary and capricious standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 103 (1989); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991). The arbitrary and capricious standard is the least demanding form of judicial review of an administrative decision. *Williams v. International Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). A decision regarding eligibility for benefits is not arbitrary and capricious if the decision is "rational in light of the plan's provisions." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996). Stated differently, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotations and citation omitted); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir.1998) (en banc). In applying the arbitrary and capricious standard in ERISA actions, a court is limited to reviewing the evidence contained within the administrative record. *Wilkins*, 150 F.3d at 615.

Courts within the Sixth Circuit utilize the arbitrary and capricious standard even when a conflict of interest exists. *Davis,* 887 F.2d at 694 (conflict of interest significant "only to the extent that any possible conflict of interest should be taken into account as a factor in determining whether the Committee's decision was arbitrary and capricious"). Courts will, however, weigh a potential conflict of interest as a factor in determining whether the decision to deny benefits was arbitrary and capricious. *Firestone*, 489 U.S. at 115; *Davis*, 887 F.2d at 694.

## III. Analysis

Case No. 1:05cv61
Gwin, J.

The plaintiff makes two claims: (1) improper denial of disability benefits in violation of 29 U.S.C. § 1132(a)(1)(B); and (2) breach of fiduciary duty in violation of 29 U.S.C. § 104(a)(1)(B). The Court addresses each claim in turn.

*A. Improper Denial Of Benefits*

Unum's decision denying Houston's claim for continued long-term disability benefits was not arbitrary and capricious.

Unum made its initial denial based on the plaintiff's medical records and a flawed assessment of the plaintiff's position. When the plaintiff appealed, Unum reviewed additional records and reassessed the plaintiff's position. Unum received new medical opinions from in-house and independent physicians. After taking these steps, Unum upheld the initial denial.

As previously stated, for disabilities based on "self-reported symptoms," Unum generally limits long-term disability benefits to 12 monthly payments. [A.R. at 656]. Unum makes additional payments for such disabilities if an employee is confined to a hospital at the end of the 12-month period, or if she later is confined to a hospital for at least 14 days in a row. *Id.* at 656-655. The Plan defines "self-reported symptoms" as symptoms "that are not verifiable using tests, procedures, or clinical examinations," including "headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness, and loss of energy." *Id.* at 642.

In this case, the plaintiff's disability was primarily based on self-reported symptoms of pain, fatigue, stiffness, and soreness. Her doctors observed some swelling, but there is no indication that the swelling in and of itself rendered the plaintiff unfit to return to work. Based on these symptoms, the plaintiff received long-term disability benefits covering the approximate period from July 2002 to January 2004. *Id.* at 792-790.

Case No. 1:05cv61
Gwin, J.

By January 2004, Unum saw insufficient facts demonstrating that the plaintiff suffered from debilitating physical symptoms beyond the self-reported ones. The plaintiff was not confined to a hospital. She was not even in the full-time care of a pain specialist, neurologist, or orthopedist who might offer further insight into and relief from her self-reported symptoms. The situation had not substantially changed by the time Unum denied Houston's appeal in October 2004. Due to the lack of objective evidence of a disability, as discussed by the opinions of the in-house and independent physicians, Unum could rationally decide that Houston was not eligible for continued long-term disability benefits under the Plan.

The plaintiff cites various notes from her physicians to shore up her argument that objective facts demonstrated her disability. The plaintiff relies especially on the progress notes of Dr. Harris. *See* Doc. 28 at 7; Doc. 34 at 3. The plaintiff says these notes demonstrate that she suffers from "decreased range of motion, tenderness, and at times, pain." *Id.* Most of the physicians' notes are nearly completely illegible. The Court nevertheless reviewed the cited records. These documents provide little assistance to the Court and the plaintiff. While the medical records occasionally refer to the plaintiff's pain and stiffness, her doctors rely chiefly on the plaintiff's subjective comments in making their assessments. This does not suffice to demonstrate that Unum acted arbitrarily when it denied eligibility under the Plan. As Dr. Lipton of Penn State noted in her independent report: "In the absence of a more extensive workup, it is not possible to say that the patient was indeed disabled, and not able to perform her usual work duties." [A.R. at 23].

Additionally, while the patient's cognitive level may have been well below average, there is no evidence that the patient's cancer was responsible for this. As far as the record shows, the plaintiff had the same cognitive capacity before and after she went on disability leave.

Case No. 1:05cv61
Gwin, J.

Under these circumstances, it was not arbitrary and capricious for Unum to deny the plaintiff's continued long-term disability benefits or her appeal.

*B. Breach Of Fiduciary Duty*

Plaintiff Houston's fiduciary duty claim fails as a matter of law. A beneficiary's fiduciary duty claim fails where ERISA provides another remedy. *See Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 615 (6th Cir. 1998). In this case, the plaintiff has the alternative remedy of a claim for improper denial of benefits under 29 U.S.C. § 1132(a)(1)(B). She thus may not pursue a fiduciary duty claim.

## IV.  Conclusion

For the foregoing reasons, the Court **DENIES** the plaintiff's motion for judgment on the administrative record [Doc. 28], and **GRANTS** Unum's motion for judgment on the administrative record.  [Doc. 29].

IT IS SO ORDERED.


Dated: March 9, 2006                              s/    *James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE